IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BETH A. SWANK, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Civil Action No. 2:19-1484 |
| ANDREW M. SAUL, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) ) |

AMBROSE, Senior District Judge

**OPINION**
**and**
**ORDER OF COURT**

**SYNOPSIS**

Pending before the Court are Cross-Motions for Summary Judgment. [ECF Nos. 11 and 13]. Both parties have filed Briefs in Support of their Motions. [ECF Nos. 12 and 14]. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, Defendant's Motion [ECF No. 13] is granted and Plaintiff's Motion [ECF No. 11] is denied.

**I. BACKGROUND**

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). Plaintiff applied for SSI on or about June 29, 2017. [ECF No. 7-5 (Ex. D1D)]. In her application, she alleged that she was disabled due to brain deficiency due to severe depression, severe anxiety, chronic migraines, lower back pain, arthritis in left knee, sleep apnea, high blood pressure, and learning disability, and that she had been unable to work since February 12, 2015. [Id.; ECF No. 7-6 (Ex. D3E)]. Administrative

1

Law Judge ("ALJ") Joseph R. Doyle held a hearing on January 7, 2019, at which Plaintiff was represented by counsel. [ECF No. 7-2, at 35-52]. Plaintiff appeared at the hearing and testified on her own behalf. Id. A vocational expert also was present at the hearing and testified. Id. at 49-51. In a decision dated January 24, 2019, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. [ECF No. 7-2, at 12-28]. On October 16, 2019, the Appeals Council denied Plaintiff's request for review. Id. at 1-6. Having exhausted all of her administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. [ECF Nos. 11 and 13]. The issues are now ripe for my review.

## II.     LEGAL ANALYSIS

### A.     STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Regardless of "the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (U.S. 2019). Substantial evidence has been defined as "more than a mere scintilla." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek, 139 S. Ct. at 1154. The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549,

552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. § 416.920. The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to her previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

### B.  Whether the ALJ Erred in His RFC Determination

At step two of the analysis, the ALJ found that Plaintiff had severe impairments, including degenerative disc disease, migraines, obesity, depressive disorder, anxiety disorder, and mild intellectual disability. [ECF No. 7-2, at 14-16]. The ALJ found that Plaintiff's high blood pressure, obstructive sleep apnea, right hip pain, left knee arthritis, and GERD were non-severe impairments. Id. At step three of the analysis, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, including Listings 1.04, 12.04, 12.05, and 12.06. Id. at 16-20. The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform light work, except she was limited to only occasional exposure to hazards, defined as work with machinery having moving mechanical parts, use of commercial vehicles, or exposure to unprotected heights. In addition, Plaintiff was limited to the performance of simple, routine, and repetitive tasks, as well as work establishing only production quotas based on end of workday measurements, without fast-paced production quotas; and to only occasional interaction with the public and co-workers. Id. at 20-27.

Plaintiff argues that the ALJ's RFC finding is deficient on several grounds. First, Plaintiff contends that the ALJ erroneously disregarded her need for closer supervision on the job due to her low IQ and mild intellectual disability. Second, she asserts that the ALJ failed to consider the cumulative and combined impact of her obesity, fatigue, and non-severe obstructive sleep apnea on her ability to work. Third, she avers that the ALJ did not adequately consider the effect of her

migraine headaches on her ability to stay on job tasks. Fourth, Plaintiff alleges that the ALJ erred in failing to find her treating physician persuasive. Fifth, she contends that the RFC finding does not account for her many mental limitations. Sixth, she faults the RFC finding for failing to include all of the limitations posed in the hypothetical questions to the VE. I address each of these arguments below.

Plaintiff first argues that the ALJ erroneously disregarded her need for closer supervision on the job due to her low IQ after he found her mild intellectual disability to be a severe impairment. [ECF No. 12, at 12-15]. Specifically, Plaintiff cites Social Security Ruling 85-16, which states that claimants whose only finding in intellectual testing is an IQ between 60 and 69 ordinarily would be expected to understand simple oral instructions and to be able to carry out these instructions under somewhat closer supervision than required of an individual with a higher IQ. See S.S.R. 85-16. Plaintiff received a full-scale IQ score of 65 on the Weschler Adult Intelligence Scale (WAIS-IV) in 2018 from one-time examiner, Lindsey Groves, Ph.D, who evaluated Plaintiff at the request of her counsel. [ECF 7-10, Ex. D15F]. Consequently, Plaintiff contends the ALJ wrongfully failed to include limitations related to responding appropriately to supervision in the RFC determination or his hypothetical questions to the VE. This argument is unpersuasive.

Social Security Ruling 85-16 provides, in relevant part:

> [A]n individual, in whom the only finding in intellectual testing is an IQ between 60 and 69, is ordinarily expected to be able to understand simple oral instructions and to be able to carry out these instructions under somewhat closer supervision than required of an individual with a higher IQ. Similarly, an individual who has an IQ between 70 and 79 should ordinarily be able to carry out these instructions under somewhat less close supervision.

S.S.R. 85-16, 1985 WL 56855, at *3 (1985). The Ruling makes clear, however, that the Commissioner should also consider other evidence, including medical history and the observations of medical sources, in assessing a claimant's mental RFC. See id. at *4; see also,

e.g., Gonzales v. Astrue, No. 3:10CV02880, 2012 WL 711521, at *8–9 (N.D. Ohio Mar. 5, 2012) (noting that Ruling 85-16 does not mandate a conclusion that all claimants with an IQ score between 60 and 69 receive RFC limitations of oral instruction and close supervision).

Here, the ALJ did not disregard Plaintiff's 2018 IQ scores. See ECF No. 7-2, at 20-24. Rather, he considered those scores, found her mild intellectual disability to be a severe impairment, and imposed significant limitations in the RFC finding as a result of her mental impairments, including a limitation to the performance of simple, routine, and repetitive tasks, as well as work establishing only production quotas based on end of workday measurements, without fast-paced production quotas; and only occasional interaction with the public and co-workers. Id. Consistent with Ruling 85-16, however, the ALJ also appropriately considered other record evidence, including Plaintiff's daily activities, medical history, and observations of her medical sources, in reaching his mental RFC finding. See id. (citing Exs. D1A, D1F, D9F, D13F).[1] The ALJ further found persuasive the report of state agency physician, Ray Milke, Ph.D., who opined, inter alia, that Plaintiff was capable of performing simple, routine, and repetitive tasks; understanding, retaining, and following simple instructions; and was not significantly limited in her ability to sustain an ordinary routine without special supervision. See id. at 23-24 (citing Ex. D1A).[2] The ALJ's consideration of all of this evidence belies any contention that he ruled in contravention of SSR 85-16. Because the ALJ appropriately considered all of the record evidence, and

---

[1] As the ALJ noted, Plaintiff's 2018 full-scale IQ score was not the "only finding in intellectual testing" in the record. Rather, in 1990, Plaintiff received IQ scores of 79 and 97. [ECF No. 7-7 (Ex. D1F)]. Moreover, on the 2018 WAIS-IV test, Plaintiff also received a verbal comprehension score of 85, a working memory score of 63, a perceptual reasoning score of 77, and a processing speed score of 76. [ECF No. 7-10 (Ex. D15F)].

[2] The ALJ also addressed Dr. Groves's report, but found her opinions unpersuasive because, inter alia, the opinions were inconsistent with Plaintiff's medical and education records and Dr. Groves failed to address those inconsistencies; Dr. Groves's relationship with Plaintiff was based on a single examination arranged at the request of her counsel; and some of Dr. Groves's opinions were opinions on matters reserved to the Commissioner. [ECF No. 7-2, at 25 (citing Ex. D15F).

substantial evidence supports his mental RFC finding, I find no error on this issue.[3]

Next, Plaintiff argues that the ALJ erred in his RFC determination by not considering the cumulative and combined impact of Plaintiff's severe obesity, her fatigue and her non-severe obstructive sleep apnea on her working ability at step five of the sequential evaluation process in derogation of Social Security Ruling 02-1p and the Commissioner's regulations at 20 C.F.R. § 416.923. [ECF No. 12, at 15-17]. Specifically, Plaintiff states that although the ALJ found Plaintiff's obesity to be a severe impairment and her sleep apnea to be a non-severe impairment at step two of the analysis, he failed to address these impairments, including their combined effect, at step five. See id.

This argument is without merit because the ALJ clearly evaluated the combined effects of Plaintiff's impairments, including her obesity, sleep apnea, and related fatigue, in determining her RFC. [ECF No. 7-2]. For example, at step two, the ALJ acknowledged that "[n]on-severe impairments can, . . . when considered in conjunction with one another and the claimant's severe impairments, affect her residual functional capacity." [ECF No. 7-2, at 16]. He continued by stating that "[i]n recognition of this fact, and in accordance with Social Security regulations, any such effect that the claimant's non-severe impairments would have had on her ability to function has been considered when formulating her residual functional capacity." Id. Earlier in his step two analysis, the ALJ discussed Plaintiff's sleep apnea diagnosis and related fatigue and stated that

---

[3] Plaintiff further asserts that the ALJ's hypothetical questions to the vocational expert were deficient because they did not include limitations on responding appropriately to supervision. [ECF No. 12, at 15]. It is well-settled that the law only requires the ALJ to accept a VE's responses to hypothetical questions that accurately reflect a claimant's limitations supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). As set forth above, Plaintiff's argument that the ALJ erroneously failed to include a supervision limitation in the RFC finding is without merit. Because the ALJ properly considered Plaintiff's limitations supported by the record, and the hypothetical questions on which the ALJ relied accurately reflected those limitations, I find no error on this issue.

"he considered the claimant's complaints of fatigue in connection with her severe impairments and in determining her residual functional capacity, as discussed below." Id. Similarly, in his RFC analysis, the ALJ stated, inter alia, "[g]iven the claimant's claims of low back pain with tenderness and pain with range of motion and intact strength, *as well as her complaints of headaches and fatigue with excessive weight*, the undersigned determined that the claimant is limited to only occasional lifting of twenty pounds, and only occasional exposure to hazards defined as work with machinery having moving mechanical parts, use of commercial vehicles, or exposure to unprotected heights." Id. at 23 (emphasis added). Further, the ALJ found state agency medical consultant, Margel Guie, M.D.'s opinion as to Plaintiff's physical limitations unpersuasive because, among other things, Plaintiff's headaches, back tenderness, *excessive weight, and claims of fatigue*, supported additional limitations beyond Dr. Guie's assessment that Plaintiff could perform medium work. Id. (emphasis added); see also id. at 20 ("In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.").

Nothing in Social Security Ruling 02-1p, to which Plaintiff cites, requires remand on this issue. This Ruling, titled "Evaluation of Obesity," provides guidance concerning the evaluation of obesity in SSI and DIB claims. S.S.R. 02-1p, 2000 WL 628049.[4] Although the Ruling indicates that the ALJ should evaluate a claimant's obesity at all applicable steps of the sequential evaluation process, it emphasizes that a diagnosis of obesity does not require a finding of decreased function or disability. Rather, the ALJ must evaluate each case based on the

---

[4] S.S.R. 02-1p was rescinded and replaced by S.S.R. 19-2p, effective May 20, 2019. Federal courts must review final decisions of the Commissioner using the ruling in effect at the time of that decision. See S.S.R. 19-2p, n.14. Here, the ALJ issued his decision on January 24, 2019, and appropriately applied S.S.R. 02-1p therein. [ECF No. 7-2, at 20, 28]. Both parties apply S.S.R. 02-1p in their briefing, and I do the same here.

information in that particular case record. See id. As set forth above, the ALJ in this case properly considered Plaintiff's obesity at all applicable steps of the evaluation process, both singly and in combination with her other impairments, including her sleep apnea and related fatigue. Based on the information in the case record, the ALJ also incorporated into his RFC finding many of the limitations that SSR 02-1p recognizes that obesity can cause, including, inter alia, limitations on lifting, carrying, toleration of hazards, and social functioning. [ECF No. 7-2, at 20]. For all of these reasons, I find no error in this regard.

Third, Plaintiff argues that the ALJ erred in his RFC determination by failing to properly consider her "severe chronic daily uncontrolled migraine headaches" on her ability to stay on job tasks. [ECF No. 12, at 3, 17-20]. Although Plaintiff acknowledges that the ALJ found her headaches to be a severe impairment and determined that Plaintiff has functional limitations due to her migraines, she contends he nevertheless erred by not "analyzing or provideing [*sic*] any weight or persuasiveness" to the findings of Plaintiff's treating physician, Efren B. Leonida, Jr., M.D., with respect to her headaches. Id. This argument is without merit.

Under the applicable regulations, the ALJ is not required to give any "specific evidentiary weight, including controlling weight, to any medical opinion." 20 C.F.R. § 416.920c(a). Instead, the ALJ is required to evaluate the persuasiveness of medical opinions and prior administrative medical findings, including functionality opinions from treating physicians, id. § 416.913(a)(3), based on several factors, id. § 416.920c(c)(1)-(c)(5), with a focus on consistency and supportability, id. § 416.920c(a). Consistency and supportability are the only factors ALJs must address in their written opinions. Id. § 416.920c(b).

In this case, however, the records Plaintiff cites from Dr. Leonida are treatment records, not medical opinions as defined in the applicable regulations. See ECF No. 12, at 18-20 (citing

records contained in Ex. D14F); see also 20 C.F.R. § 416.913(a)(2) (defining medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in" the ability to perform work-related functions). Because Dr. Leonida's records do not fall within the scope of 20 C.F.R. § 416.920c, the ALJ was not required to evaluate their persuasiveness under that subsection.

Moreover, the ALJ did not ignore Dr. Leonida's treatment records in evaluating Plaintiff's impairments, including her headaches. To the contrary, the ALJ cited Dr. Leonida's records repeatedly throughout his analysis. See, e.g., ECF No. 7-2, at 22 ("The claimant also reported some ongoing issues with migraine headaches at that time . . . . (citing Exs. D14F, D16F)); id. at 22 ("[T]he claimant's primary care provider noted that her headaches had improved and were less frequent with receipt of propranolol . . . ." (citing Exs. D14F, D16F)). For this reason as well, the ALJ did not err in his analysis in this regard.

Fourth, Plaintiff argues that the ALJ erred in his RFC determination by not including Plaintiff's "many moderate mental functional symptom limitations as required by S.S.R. 16-3P and S.S.R. 96-8P." [ECF No. 12, at 3, 20-22]. Specifically, Plaintiff claims that the ALJ found that Plaintiff had moderate limitations with respect to her capacity for understanding, remembering, or applying information, interacting with others, and concentrating, persisting or maintaining pace, but that he failed to incorporate these limitations into the RFC or his hypothetical question to the VE. See id. (averring that "the difficulty of a task does not always equate with the difficulty of staying on task").

This argument is unpersuasive because the ALJ here did address the limitations at issue by specifically limiting Plaintiff in each field for which he found such limitations. For example, to accommodate Plaintiff's limitations with respect to understanding, remembering, or applying

information, the RFC limited Plaintiff to simple, routine, and repetitive tasks; with respect to concentrating, persisting, or maintaining pace, the RFC additionally limited Plaintiff to work establishing only production quotas based on end of workday measurements without fast-paced production quotas; and with respect to interacting with others, the RFC limited Plaintiff to only occasional interaction with the public and coworkers. [ECF No. 7-2, at 20]. Moreover, all of these limitations were included in the hypothetical question to the VE accepted by the ALJ. [ECF No. 7-2, at 49-51]. Because the ALJ appropriately addressed Plaintiff's mental limitations in his RFC analysis, and substantial evidence supports his findings that no greater restrictions were warranted, remand on this issue is denied. See ECF No. 7-2, at 20-25 (citing Exs. D1A, D9F, D13F, D14F, D16F).

Plaintiff's remaining arguments fault the ALJ for failing to account for the VE's testimony that there would be no jobs available that a hypothetical individual who was off task more than 15 percent of the workday or would consistently miss work more than two days per month could perform. [ECF No. 12, at 21-22]. I disagree. Again, the law only requires the ALJ to include limitations supported by the record in his hypothetical question to the vocational expert. Chrupcala, 829 F.2d at 1276; Podedworny, 745 F.2d at 218. Here, the substantial evidence cited above shows that the hypothetical question the ALJ adopted accurately reflected Plaintiff's impairments. See ECF Nos. 7-2, at 49-51. Because the ALJ properly considered Plaintiff's limitations supported by the record, and the hypothetical question on which the ALJ relied accurately reflected those limitations, I find no error on this issue.[5]

---

[5] To the extent Plaintiff's brief highlights evidence she contends supports her alleged limitations, the question is not whether substantial evidence supports Plaintiff's claims, or whether there is evidence that is inconsistent with the ALJ's findings. Rather, the issue is whether substantial evidence supports the ALJ's findings. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Thus, any arguments in this regard are misplaced.

Because the ALJ properly analyzed Plaintiff's claim, and his findings are supported by substantial evidence, the decision below is affirmed. 42 U.S.C. § 405(g) (sentence four).

### III.     CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.   An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BETH A. SWANK, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Civil Action No.   2:19-1484 |
| ANDREW M. SAUL, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) ) |

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 25th day of March, 2021, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Defendant's Motion for Summary Judgment [ECF No. 13] is GRANTED, and Plaintiff's Motion for Summary Judgment [ECF No. 11] is DENIED. The decision of the Commissioner is hereby affirmed.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge